Barbara AUSTIN, Plaintiff,

v.

Sandra BERRYMAN, Patrice Johnson, Joseph Hayes, Ralph Cantrell, Defendants.

Civ. A. No. 86–0147–A.

United States District Court, W.D. Virginia, Abingdon Division.

Sept. 23, 1987.

Hugh F. O'Donnell, Castlewood, Va., for plaintiff.

J. Steven Sheppard, III, Asst. Atty. Gen., Richmond, Va., for defendants.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

This case is currently before the court on cross-motions for partial summary judg-

1. Salem and Castlewood are approximately one hundred and fifty miles apart.

2. Effective January 1, 1987, VA. Code § 60.1–58(a) was repealed. The parallel provision is now found at § 60.2–618(1).

ment. Jurisdiction is conferred on this court by 28 U.S.C. § 1343(a)(3).

The underlying facts are as follows: The plaintiff, Barbara Austin ("Austin"), was employed at McVitty House, Inc. in Salem, Virginia from May 14, 1984 through June 13, 1985. She quit after her husband decided to move to Castlewood, Virginia [1] to live with and care for his aging mother. Austin then filed for unemployment compensation benefits effective June 16, 1985. The Virginia Employment Commission ("VEC") subsequently held that Austin was ineligible for benefits because she had voluntarily left her employment without good cause. VEC based this determination on VA Code § 60.1–58(a)(ii) (1982),[2] which disqualifies an individual who otherwise satisfies the criteria for unemployment compensation benefits if he has voluntarily resigned "to accompany or to join his or her spouse in a new locality."

Austin filed the present action against one member and three employees of the VEC[3] alleging that the denial of benefits violates her first amendment right to freely exercise her religion, her fundamental rights associated with marriage, her right to intrastate travel, and the equal protection and due process clauses of the fourteenth amendment. She seeks declaratory relief that the statute on its face and as applied is unconstitutional. She also seeks an injunction against further use of the spousal relocation clause and an award of all unemployment compensation benefits that she would have been paid except for the statutory disqualification.

This case is currently before the court on cross-motions for partial summary judgment. Austin has moved for partial summary judgment that VEC interfered with her first amendment rights, her fundamental rights associated with marriage, her right to intrastate travel, and her right to equal protection of the laws. Defendants have cross-moved for partial summary

3. Austin has sued the defendants in their official capacities.

judgment on the same issues except the right to intrastate travel.

## FREE EXERCISE ISSUE

■ The first issue before the court is whether VEC's denial of unemployment compensation benefits violates Austin's first amendment right to freely exercise her religion.[4] Specifically she claims that the tenets of the Holiness faith required her to respect her husband's decision to move, to live with her husband, to honor and help her mother-in-law, and to rear her four minor children in conjunction with her husband.[5]

A trilogy of Supreme Court cases addresses the denial of unemployment compensation benefits as a violation of the right to freely exercise one's religion. In *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), the Court held that South Carolina impermissibly interfered with the exercise of religion when it denied a Seventh-Day Adventist unemployment compensation benefits after she had refused to accept otherwise suitable employment that would have required working on the Sabbath.[6] The Court noted the relevant test for determining free exercise violations. First, the state cannot unconstitutionally burden the free exercise of religion. Second, no compelling state interest can justify the infringement. *Id.*, 374 U.S. at 403, 83 S.Ct. at 1793. The Court next dealt with this issue in *Thomas v. Review Board of the Ind. Employment Sec. Div.*, 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981). In *Thomas* the Court held Indiana violated Thomas' First Amendment rights when it denied him unemployment compensation benefits after he had resigned from his job manufacturing military hardware due to religious objections.[7] The Court significantly clarified the *Sherbert* two-part test. A state unconstitutionally burdens the free exercise of religion whenever it forces a worker to choose between "fidelity to religious belief or cessation of work." *Id.* at 717, 101 S.Ct. at 1432. The Court also noted that:

> Where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists. While the compulsion may be indirect, the infringement upon free exercise is nonetheless substantial.

*Id.* at 717–18, 101 S.Ct. at 1431–32. A state can justify an infringement only by demonstrating that it has utilized "the least restrictive means of achieving some compelling state interest." *Id.* at 718, 101 S.Ct. at 1432. The *Thomas* Court then concluded that Indiana's concern for avoiding unemployment, preserving the fund, and avoiding inquiry into the applicants' religious beliefs do not qualify as compelling state interests. *Id.* at 718–19, 101 S.Ct. at 1432–33. Finally in *Hobbie v. Unemployment Appeals Comm'n of Fla.*, —— U.S. ——, 107 S.Ct. 1046, 94 L.Ed.2d 190 (1987), the Court held that Florida's denial of unemployment compensation benefits to a Seventh-Day Adventist who had been discharged after refusing to work on the Sabbath violated her first amendment free exercise rights.[8]

The defendants attempt to distinguish the instant facts on three grounds. First they contend that Austin's decision to move, rather than any state action, resulted in her unemployment. This argument conveniently overlooks the challenged state action—the denial of unemployment com-

---

**4.** Austin does not allege that VA Code § 60.1–58 is facially unconstitutional.

**5.** Defendants have not challenged the sincerity of Austin's religious beliefs.

**6.** The South Carolina statute is facially neutral; it applies to anyone who has refused available, suitable employment.

**7.** The Indiana statute applies to anyone who fails to demonstrate "good cause [for resigning] in connection with work." *Thomas v. Review Board of the Ind. Employment Sec. Div.*, 450 U.S. at 712, 101 S.Ct. at 1429.

**8.** The Florida statute denies unemployment compensation benefits to anyone whose discharge results from work-related misconduct.

pensation benefits, the identical state action present in *Sherbert, Thomas,* and *Hobbie.* They also suggest that *Sherbert, Thomas,* and *Hobbie* involved incompatible employment conditions. However, location certainly qualifies as an employment condition as much as a schedule. Finally VEC asserts that Austin's unemployment is a consequence of her free choice. Austin's resignation, however, reflects no more free choice than does Sherbert's refusal to accept otherwise suitable employment.

This court cannot distinguish *Sherbert, Thomas,* and *Hobbie* from the instant facts. In all four situations application of a facially neutral statute to someone whose unemployment stemmed from exercising a religious belief resulted in denial of unemployment compensation benefits. In each case, the state denied benefits because of conduct "mandated by religious belief." Furthermore, defendants fail to satisfy either prong of the *Sherbert* two-part test. Austin was forced to choose between "fidelity to religious belief or cessation of work." *Thomas,* 450 U.S. 707, 717, 101 S.Ct. 1425, 1431–32, 67 L.Ed.2d 624 (1981). Defendants contend that their denial of unemployment compensation benefits maintains the fiscal integrity of its compensation fund. The Court rejected this rationale as a compelling state interest in *Thomas,* 450 U.S. at 718–19, 101 S.Ct. at 1432. *See also Sherbert v. Verner,* 374 U.S. at 407, 83 S.Ct. at 1795. Defendants also assert that their denial of benefits ensures a stable work force. This court merely notes that unemployment compensation benefits unlike welfare benefits deal with short-term unemployment between jobs.

Defendants' final argument is that granting Austin's unemployment compensation benefits but denying those benefits to someone who quits to fulfill secular objectives violates the Establishment Clause. The Supreme Court has consistently rejected this argument. *See Sherbert,* 374 U.S. 398, 409–10, 83 S.Ct. 1790, 1796–97; *Thomas,* 450 U.S. 707, 719–20, 101 S.Ct. 1425,

1432–33; and *Hobbie,* —— U.S. ——, ——, 107 S.Ct. 1046, 1051.

Thus, this court has no choice but to apply the standard articulated in *Sherbert, Thomas,* and *Hobbie* and hold that Virginia's denial of unemployment compensation benefits to Austin violates her first amendment right to freely exercise her religion.

*Fundamental Marriage Rights Issue*

 In addition to her first amendment free exercise claim, Austin asserts that VA Code 60.1–58(a)(ii) is unconstitutional on its face [9] because it impermissibly intrudes upon fundamental rights associated with marriage and the family. Although the question is a difficult and close one, this court concludes that the Virginia statute is unconstitutional for the reasons stated below.

The United States Supreme Court has confirmed that the right to marry "is of fundamental importance for all individuals." *Zablocki v. Redhail,* 434 U.S. 374, 384, 98 S.Ct. 673, 680, 54 L.Ed.2d 618 (1978). Indeed, "the right 'to marry, establish a home and bring up children' is a central part of the liberty protected by the due process clause ..." *Id.* (quoting *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed.2d 1042 (1923). The constitutional right to marry is derived from the fundamental right to privacy implicit within the due process clause of the fourteenth amendment. The right to privacy also prohibits "unjustified governmental interference" with personal decisions relating to marriage, procreation, contraception, family relationships, and childrearing and education. *Zablocki,* 434 U.S. at 385, 98 S.Ct. at 680; *Carey v. Population Services International,* 431 U.S. 678, 684–85, 97 S.Ct. 2010, 2015–16, 52 L.Ed.2d 675 (1977). From these cases, it is clear that the Constitution protects many important liberties associated with marriage and the family. On the other hand, it is equally clear that this protection is not all-encompassing. The Court in *Zablocki* was careful to state:

**9.** Austin claims that the statute is unconstitutional both on its face and as applied. How-

ever, this court cannot distinguish these two situations and will analyze them together.

By reaffirming the fundamental character of the right to marry, we do not mean to suggest that every state regulation which relates in any way to the incidents of or prerequisites for marriage must be subjected to rigorous scrutiny. To the contrary, reasonable regulations that do not significantly interfere with decisions to enter into the marital relationship may legitimately be imposed.

*Zablocki*, 434 U.S. at 386, 98 S.Ct. at 681.

In the case at bar, plaintiff was disqualified for unemployment benefits because she voluntarily left work to accompany her spouse in a new locality. *See* VA Code 60.1–58(a)(ii). She claims that VEC's denial of benefits interfered with her fundamental right to live with her husband and to maintain an intact family. The defendants, however, assert that the right involved is not fundamental and the statute need be only minimally rational unless the interference is direct and substantial, and finally, of course, that the interference was not direct nor substantial and that the statute is rational. The task facing this court, therefore, is to decide whether the Virginia Statute is constitutionally firm or whether it violates "the private realm of family life which the state cannot enter." *Prince v. Massachusetts*, 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944).

As noted above, "the Court has yet to hold that all regulation touching upon marriage implicates a 'fundamental right' triggering the most exacting judicial scrutiny." *Zablocki*, 434 U.S. at 397, 98 S.Ct. at 687 (Powell, J., concurring). To do so would impede upon a state's traditional powers to regulate domestic relations in the areas of incest, bigamy, homosexuality, divorce, and marital obligations. *Id.* at 398–99, 98 S.Ct. at 687–88. The Supreme Court has also upheld a provision of the Social Security Act from an equal protection challenge where the Act specified that a beneficiary who married a non-beneficiary would lose the rights to benefits. *Califano v. Jobst*, 434 U.S. 47, 98 S.Ct. 95, 54 L.Ed.2d 228 (1977). The provision was not invalid "simply because some persons who might otherwise have married were deterred by the rule or because some who did marry were

burdened thereby." *Id.* at 54, 98 S.Ct. at 99.

Austin relies heavily upon *Moore v. City of East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (plurality opinion). In this case, the Court invalidated a municipal housing ordinance that narrowly restricted the categories of relatives that could live together in one house, making it a crime under the circumstances in *Moore* for a grandmother to live with her grandson. *Id.* at 499, 97 S.Ct. at 1935. Engaging in a substantive due process analysis, the plurality recognized the inherent importance of the family and affirmed that "the Constitution protects the sanctity of the family precisely because the institution of the family is deeply rooted in this Nation's history and tradition. It is through the family that we inculcate and pass down many of our most cherished values, moral and cultural." *Id.* at 503–04, 97 S.Ct. at 1938. In light of the "freedom of personal choice in matters of marriage and family life," the plurality concluded that "when the government intrudes on choices concerning family living arrangements, this Court must examine carefully the importance of the governmental interests advanced and the extent to which they are served by the challenged regulation." *Id.* at 499, 97 S.Ct. at 1935–36.

This court is of the opinion that *Moore* provides the guidance to decide this case. Like the municipal ordinance in *Moore*, the Virginia statute "slices deeply" into the family itself. On its face it penalizes the decision of both spouses to live together. *Cf. Moore*, 431 U.S. at 498–99, 97 S.Ct. at 1934–35 (municipal ordinance slices deeply into family by deciding what relatives may live together). Although one could certainly distinguish *Moore* from the instant case in that *Moore* imposed criminal sanctions and the Virginia statute does not, that distinction does not aid the defendants. The decision in *Moore* focused on the intrusiveness of the ordinance itself upon the family. The criminal enforcement of the ordinance troubled the justices, but the overwhelming bulk of their opinion discussed, analyzed and criticized the impermissible

nature of the ordinance itself. The decision concluded that "the Constitution prevents East Cleveland from standardizing its children—and its adults—by forcing all to live in certain narrowly defined family patterns." *Id.* at 506, 97 S.Ct. at 1939. This reasoning is applicable whether the intrusive "standardization" is achieved through criminal sanctions, civil sanctions, or, as in this case, the denial of benefits for which the aggrieved party would otherwise be eligible.

This court is convinced that the Virginia statute impinges upon a fundamental right. In the constitutionally protected area of marriage and family relationships, very little could be more basic or fundamental than a married couple's right to live together. Without the right to live together, the rights to marry, raise children, use contraceptives, and to abort a pregnancy would be illusionary. "[T]he right 'to marry, *establish a home* and bring up children' is a central part of the liberty protected by the Due Process Clause ..." *Zablocki,* 434 U.S. at 384, 98 S.Ct. at 680 (emphasis added) (quoting *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923). The right to establish a home within the bonds of marriage means nothing if husband and wife cannot live together. This necessarily includes one spouse following the other when he or she relocates. These issues were similarly addressed by a California appellate court. *Boren v. California Dept. of Employment Development,* 59 Cal.App.3d 250, 130 Cal.Rptr. 683 (1976). So long as the claimant was not the sole or major support of his family, the California unemployment statute specifically disqualified a person who left work to accompany a spouse to a place where it was impractical to commute to work. *Id.* at 253 n. 1, 130 Cal.Rptr. 684 n. 1. Although the court eventually invalidated the statute on state and federal equal protection grounds, it also found that the statute infringed upon fundamental liberties relating to marriage and the family. *Id.* at 258–61, 130 Cal.Rptr. at 688–89. The right of a family to live together is fundamental because it is so basic to the structure of our society. As noted *supra,* "the Consti-

tution protects the sanctity of the family precisely because the institution of the family is deeply rooted in this Nation's history and tradition. It is through the family that we inculcate and pass down many of our most cherished values, moral and cultural." *Moore,* 431 U.S. at 503–04, 97 S.Ct. at 1938.

The Virginia statute directly and substantially impinges upon the fundamental right of a married couple to live together. The very language of the statute imposes a financial penalization on couples who choose to exercise that right. An otherwise eligible spouse is denied benefits if he or she leaves work "to accompany or to join his or her spouse in a new locality." VA Code 60.1–58(a)(ii). This penalization is the direct and foreseeable consequence of the statute. The exercise of a fundamental right is impermissibly burdened when its exercise results in deprivation of an important public benefit. *Cf. Thomas v. Review Board of the Ind. Employment Sec. Div.,* 450 U.S. 707, 716–17, 101 S.Ct. 1425, 1431–32, 67 L.Ed.2d 624 (1981) (reference to First Amendment Rights). What the Commonwealth of Virginia essentially has done is to impose a fine upon plaintiff for deciding to remain together with her husband. *Cf. Sherbert v. Verner,* 374 U.S. 398, 404, 83 S.Ct. 1790, 1794, 10 L.Ed.2d 965 (1963) (Government-imposed burden is like "a fine imposed against appellant for her Saturday worship").

This court also finds support for plaintiff's position in *Harris v. McRae,* 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980). The Court in *Harris* held that the federal government did not unconstitutionally impinge upon a woman's fundamental right to an abortion by refusing to finance the abortion with Medicaid, even though Medicaid paid for live births. Through unequal subsidization, the government could encourage alternative activity such as birth. *Id.* at 315–18, 100 S.Ct. at 2687–89. *See also Maher v. Roe,* 432 U.S. 464, 97 S.Ct. 2376, 53 L.Ed.2d 484 (1977). Although these cases might facially appear to favor the defendants' position, a closer ex-

amination indicates that that is not the case. The Court stated:

A substantial constitutional question would arise if Congress had attempted to withhold all Medicaid benefits from an otherwise eligible candidate simply because that candidate had exercised her constitutionally protected freedom to terminate her pregnancy by abortion. This would be analogous to *Sherbert v. Verner*, 374 U.S. 398 [83 S.Ct. 1790], where this Court held that a State may not, consistent with the First and Fourteenth Amendments, withhold *all* unemployment compensation benefits from a claimant who would otherwise be eligible for such benefits but for the fact that she is unwilling to work one day per week on her Sabbath. But the Hyde Amendment, unlike the statute at issue in *Sherbert*, does not provide for such a broad disqualification from receipt of public benefits. Rather, the Hyde Amendment, like the Connecticut welfare provision at issue in *Maher*, represents simply a refusal to subsidize certain protected conduct. A refusal to fund protected activity, without more, cannot be equated with the imposition of a 'penalty' on that activity.

*Harris*, 448 U.S. at 317 n. 19, 100 S.Ct. at 2688 n. 19 (emphasis in original).

The case at hand is analogous to the Court's hypothetical *supra*. In this case the defendants are withholding all unemployment benefits from the plaintiff, who is otherwise eligible, simply because she exercised her constitutional right to live with her husband. The same privacy right that supports the right to terminate a pregnancy supports the right of plaintiff and her spouse to live together. Unlike the statutes at issue in *Harris* and *Maher*, the Virginia statute provides for a broad disqualification of public benefits. It prevents plaintiff from receiving *any* unemployment benefits, even though she is otherwise eligible. This broad disqualification also removes the statute from the situation where the state simply refuses to subsidize protected conduct. *Harris*, 197 U.S. at 317 n. 19, 100 S.Ct. at 2688 n. 19.

Finally, *Califano v. Jobst*, 434 U.S. 47, 98 S.Ct. 95, 54 L.Ed.2d 228 (1977), discussed *supra*, is not controlling. The Supreme Court's analysis in *Jobst* was based upon the principle of equality embodied in the due process clause of the fifth amendment. *Jobst*, 434 U.S. at 58, 98 S.Ct. at 101. It was not a substantive due process case, like the case at hand, and accordingly did not address a fundamental rights challenge. The Court also noted in *Jobst* that the challenged social security provision was adopted "in the course of constructing a complex social welfare system that necessarily deals with the intimacies of family life." *Id.* at 54 n. 11, 98 S.Ct. at 100 n. 11. That also is not the case at hand. Except for the specific provision at issue, the Virginia unemployment system awards benefits based upon the status of the worker, not "the intimacies of family life." Finally, the appellee in *Jobst* conceded that it was reasonable to terminate social security payments to child beneficiaries in the event of marriage. *Jobst*, 434 U.S. at 54 n. 9, 98 S.Ct. at 99 n. 9. The Court reasoned that because "it was rational for Congress to assume that marital status is a relevant test of probable dependency ... [the rule] satisfied the constitutional test normally applied in cases like this." *Id.* at 53–54, 98 S.Ct. at 99. The plaintiff here, however, contests the rationality of utilizing marital status to deny benefits under these circumstances. To hold *Jobst* as controlling would decide this issue prematurely and without analysis.

The Virginia statute directly and significantly impinges upon a fundamental right. "[W]hen the government instructs on choices concerning family living arrangements, this Court must examine carefully the importance of the governmental interests advanced and the extent to which they are served by the challenged regulation." *Moore*, 431 U.S. at 499, 97 S.Ct. at 1936. The Commonwealth justifies its statute primarily on the grounds that it preserves the unemployment compensation trust fund, that it correctly distinguishes voluntary and involuntary unemployment, and that it reasonably assumes that temporary unemployment assistance is unnecessary when a

person relocates to accompany his or her spouse because the person should be able to rely upon the spouse's employment. Although these are legitimate interests and goals, they do not justify the burden placed upon the plaintiff's right to live with her husband. The Supreme Court rejected similar arguments regarding the integrity of the trust fund in *Thomas*, 450 U.S. at 718–19, 101 S.Ct. at 1432–33. *See also Sherbert v. Verner*, 374 U.S. at 407, 83 S.Ct. at 1795. Even though the number of people affected by the Virginia statute is conceivably larger than the number affected by the statutes in *Thomas* and *Sherbert*, the defendants allege but offer no conclusive evidence of the impact upon the trust fund. The defendants also contend that the statute correctly distinguishes between those who are unemployed because of necessity and those unemployed because of personal reasons. As the defendants themselves noted, however, if "compelling and necessitous" reasons exist, good cause can include leaving employment to take care of sick parents, or to take care of an ill spouse. Defendants' Memorandum at 30–32. So long as "compelling and necessitous" circumstances are present, no reason exists why a person who relocates to follow his or her spouse should not also receive benefits. This situation can be just as involuntary as the others the Commonwealth considers valid. Finally, it is not reasonable to automatically assume that a person can rely on his or her spouse's employment for support when they relocate. In the case at hand for example, Austin had a job but her husband did not. In conclusion, the Virginia statute impermissibly impinges upon plaintiff's constitutionally protected rights and accordingly, is invalid.

### Intrastate Travel Issue

■ Austin asserts that the spousal relocation provision violates her fundamental right to travel. In this case, she moved from Salem, Virginia to Castlewood, Virginia. Neither this court nor the Supreme Court has recognized a right to intrastate travel. *See Eldridge v. Bouchard*, 645 F.Supp. 749, 753–55 (W.D.Va.1986) (and cases cited therein), *aff'd*, 823 F.2d 546 (4th Cir.1987). Consequently, this claim is dismissed for failure to state a cause of action.

### Equal Protection Issues

■ In two different counts, Austin contends that VA Code § 60.1–58(a)(ii) violates the equal protection of the law. In Count III of her complaint, she argues that because some claimants who leave work for compelling personal reasons not involving relocation with a spouse can receive benefits while those claimants who relocate for personal compelling reasons to accompany a spouse are denied benefits, this violates equal protection. She makes this claim separate from her fundamental marital rights claim. In Count IV of her claim, she asserts that the Virginia statute was enacted with discriminatory intent and that it has a disproportionate impact on women. She has not asked for summary judgment on this count. Defendants, however, in cross-motions have asked for summary judgment on both counts.

In dealing with the first of plaintiff's equal protection issues, this court notes that if a fundamental right was involved its analysis would parallel the due process analysis, *supra*. Because both parties briefed the equal protection issue separate from the question of an impingement upon fundamental marital rights, this court will do the same.

The Supreme Court has held that a noncontractual claim to receive funds from the public treasury receives no constitutional protection unless the legislature engages in invidious discrimination or discriminates on the basis of criteria that bears no rational relationship to a legitimate legislative goal. *Weinberger v. Salfi*, 422 U.S. 749, 771–72, 95 S.Ct. 2457, 2469–70, 45 L.Ed.2d 522 (1975). Obviously *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), *Thomas v. Review Board of the Ind. Employment Sec. Div.*, 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981), and similar cases discussed *supra* in relation to the fundamental rights analysis demonstrate that *Salfi* is not all-encompassing. In relation to the issue at hand, however,

*Salfi* indicates that the challenged statute will stand if a rational basis justifies it. The Virginia legislature could rationally believe that someone who relocates with a spouse could rely on that spouse's income and would not need unemployment compensation. Accordingly, the statute is valid and the court denies plaintiff's motion for summary judgment and grants defendants' motion for summary judgment on this issue.

In relation to Count IV, this court agrees with Austin that defendants' cross-motion for summary judgment is premature. In the normal course of things, plaintiff should have an opportunity to develop through discovery her claim that the legislature acted with discriminatory intent and that the statute has a discriminatory impact upon women. Accordingly, defendants' cross-motion for summary judgment is denied. The court notes, however, that it does not have to decide the merits of Count IV because it has already granted summary judgment to plaintiff on two other counts.

### Conclusion

This court is of the opinion that as applied to Austin's claim for unemployment compensation, VA. Code § 60.1–58(a)(ii) violates Austin's first amendment right to freely exercise her religion. This court further concludes that the statute unconstitutionally burden's Austin's fundamental marital and family rights. The statute, however, does not violate her right to intrastate travel or to the equal protection of the laws. The court also believes that defendants' motion for partial summary judgment on the Count IV equal protection claim relating to the statute's alleged discriminatory and disproportionate impact upon women is premature for summary judgment. Accordingly, the court denies defendants' motion but refrains from deciding the merits of this claim.

In light of the eleventh amendment prohibition against imposing retroactive monetary damages against a state treasury, this court is limited to declaratory and prospective injunctive relief. *See Edelman v. Jor-dan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Furthermore, effective January 1, 1987, the legislature repealed VA. Code § 60.1–58(a)(ii) and enacted a parallel provision at VA. Code § 60.2–618(1)(ii). Accordingly, this court will enter an Order granting partial summary judgment to Austin on her first amendment and fundamental marital rights claims and denying as premature defendants' motion for partial summary judgment on Count IV. The Order will also grant partial summary judgment to defendants on the Count III equal protection claim and will dismiss Austin's right to travel claim for failure to state a cause of action. In view of the court's decision in this case, the court does not find it necessary to further rule on Count IV or on plaintiff's Counts V or VI, which were not addressed by the parties in motions for summary judgment. In addition, this court enjoins defendants from applying VA. Code § 60.2–618(1)(ii) against Austin or any other claimant to deny unemployment compensation benefits solely because the claimant left work to accompany or join his or her spouse in a new locality.

The Clerk is directed to send certified copies of this Memorandum Opinion to counsel of record.

### ORDER

In accordance with a Memorandum Opinion entered this date, this court grants declaratory relief in the form of partial summary judgment to plaintiff on her first amendment claim and her fundamental marital rights claim. The court denies as premature defendants' motion for summary judgment on Count IV, but does not decide the mertis of the claim. The court further grants partial summary judgment to defendants on the Count III equal protection claim and dismisses plaintiff's right to travel claim for failure to state a cause of action. In view of the court's decision in this case, the court does not find it necessary to further rule on Count IV or on plaintiff's Counts V or VI, which were not addressed by the parties in motions for summary judgment.

Finally, this court enjoins defendants from applying VA Code § 60.2–618(1)(ii) against plaintiff or any other claimant to deny unemployment compensation benefits solely because the claimant left work to accompany or join his or her spouse in a new locality. This case is stricken from the docket.

The Clerk is directed to send certified copies of this Order to counsel of record.