## CIRCUIT COURT OF FREDERICK COUNTY

Richard R. Neff,
t/a Shawnee Paving Co.

v.

Virginia Employment Commission et al.

May 29, 1989

Case No. (Law) 88-64

By JUDGE ROBERT K. WOLTZ

This case is on a petition under the Virginia Unemployment Compensation Act, Code §§ 60.2-100 *et seq.*, by Neff for judicial review pursuant to § 60.2-625 of a determination by the Virginia Employment Commission that one of his employees is entitled to unemployment compensation benefits. The employee was unable to continue his work due to loss of transportation from his distant residence to his place of employment. The appeal involves the question of disqualification for benefits under § 60.2-618, and more specifically under that section whether the employee "is unemployed because he left work voluntarily without good cause."

The function of the court on judicial review is precisely defined under § 60.2-625 providing:

> In any judicial proceeding under this chapter, the findings of the Commission as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law.

The deputy's determination was that the employee was disqualified for benefits, and the decision of the appeals examiner reached the same conclusion. Decision of the Commission through a special examiner reversed the latter.

The term "good cause" is a general one and open to broad interpretation. It is not further specifically defined by statute except for statement of two specific instances which will not constitute good cause, Section 60.2-618(1), (i) leaving work to become self-employed, and (ii) leaving to join spouse in a new locality. There appear to be only one reported Virginia case, *Lee v. VEC*, 1 Va. App. 82 (1985), and one reported federal case, *Austin v. Berryman*, 670 F. Supp. 672 (W.D. Va. 1987), applying "good cause," and neither attempts expressly to define the term; nor does either involve the question of transportation to and from work.

In this case the employee and his two brothers were employed by the appellant in his asphalt paving business. The three lived in Maryland approximately one hundred miles distant from the employer's place of business and had been pursuing this employment for seven or eight months commuting daily from their homes to this area, except for a period early in their employment when the three of them had lived locally in a tent. No public transportation between residence and work was available. At different times they used either a vehicle of one of the brothers or a vehicle of the employee's wife, both of which were somewhat old and mechanically unreliable.

At the time the employee discontinued work for the employer, though the latter had work available for him, the brother's vehicle had become inoperable due to mechanical problems which were not remedied. The employee had no money with which to repair his wife's car so that it could dependably and safely make the daily round trip from his residence to the locality of his work. Because of apparent lack of credit, he was unable to borrow money for vehicle repair or purchase of another vehicle adequate for his need to commute to work. He was unable otherwise to obtain transportation.

There was substantial evidence in the record before the Commission to establish these facts. The court has no problem in accepting them as found. The problem arises in applying the law of the case to the facts. The court

finds itself skewered on the horns of a dilemma. In view of the obvious social benefits intended by the Act, should the court disqualify from benefits an individual regularly employed for several months, who was impecunious and with a family to support, due to the fortuitous evaporation of his means of transportation to work; or, should he be found qualified for benefits at the expense of his employer and the unemployment compensation system despite circumstances not under the control of or responsibility of the employer and despite the danger of saddling employers generally with the assumption of a burden ordinarily to be born personally as a coincident of employment by employees?

The decision of the Commission that the claimant left work voluntarily with good cause was based on its decision in *Campbell v. Shenandoah Sand and Gravel, Inc.*, Commission Decision 13080-C (April 8, 1980). In that case the claimant lived sixty miles from work commuting daily. There was no public transportation, and he had none of his own. He rode to and from work with his job supervisor. When the supervisor left the job, the claimant had no other means of transportation. The claimant was held not to be disqualified stating as follows:

> The Commission has previously held that when *work becomes unsuitable* to an individual, he would have good cause for voluntarily leaving it. While the general rule is that transportation to and from work is a personal problem to be resolved by the individual, where changed circumstances make the work inaccessible from the individual's residence, the *work would be unsuitable*. And an individual would not be disqualified for leaving it. (Emphasis added).

The first problem is whether there exists an established administrative practice to which great weight attaches. The general principle is thus stated in *Lee v. VEC, supra*, at page 85, citing *Dan River Mills, Inc. v. Unemployment Compensation Commission*, 195 Va. 997, 1002 (1954):

> It is well settled that where the construction of a statute has been uniform for many years in administrative practice and has been acquiesced in by the General Assembly, such construction is entitled to great weight with the courts.

The principle is not that the court is bound by established administrative practice but that such practice is weighty. In this case, however, the administrative construction of the statute has been uniform based only on its decision quoted above, together with its present decision. One or two swallows do not make a summer, but decision by the Commission on this specific legal point is entitled to due consideration even if the practice is not deeply rooted.

Subparagraph one of § 60.2-618 deals with disqualification from benefits for leaving work voluntarily without good cause. Other subparagraphs deal with "suitable work" and should be read in conjunction with the preamble to the section. They are as follows:

> An individual shall be disqualified for benefits upon separation from the last employing unit for whom he has worked thirty days or from any subsequent employing unit . . . .
>
> 3a. If it is determined by the Commission that such individual has failed without good cause, either to apply for available, suitable work when so directed by the employment office or Commission or to accept suitable work when offered him . . .
>
> b. In determining whether or not any work is suitable for an individual, the Commission shall consider the degree of risk involved to his health, safety and morals, his physical fitness and prior training, his experience, his length of unemployment, and *the accessibility of available work from his residence*. (Emphasis added).

Subparagraph 3c. details several instances of work not deemed suitable with respect to which refusal to accept

will not result in denial of benefits. They have no relation to this case.

Though this case is essentially one on good cause, yet the entire section in which it appears should be construed in relation to that phrase. While the employee continued to have work available with his employer but did not accept this continuing availability, the ultimate question becomes: was his failure to accept by leaving that employment "voluntary without good cause," or had the work under the changed circumstances become no longer "suitable work" because it no longer had "accessibility . . . from his residence"?

The Commission in its *Campbell* decision noted "the general rule is that transportation to and from work is a personal problem to be resolved by the individual." This is supported by other authority; *see* 76 Am. Jur. 2d, *Unemployment Compensation*, § 59. In most instances this rule should apply as transportation to workplace is essentially an employee's problem and at the most only of secondary concern of the employer. In these days of widespread transportation by motor vehicle, plus availability of public transportation, at least in metropolitan areas, when the distance between residence and work is five, ten, twenty, or more miles up to some indeterminate maximum, the failure of means of transportation should not generally constitute such lack of accessibility as to make the employment unsuitable. But a *per se* rule should not apply in every case.

In this instance, the distance between residence and work was extreme, nearly one hundred miles as opposed to only sixty miles in the *Campbell* case. As found by the Commission, there was no means of public transportation and no means of private transportation despite extensive efforts on the part of the employee, and there was a financial inability for him to move closer to his place of employment. The extreme distance is an important factor of which the employee necessarily was aware when taking this employment but of which the employer was also necessarily aware. At the time, likely neither considered it or the eventual loss of the employee's transportation in terms of unemployment compensation benefits, but under the circumstances, the employee was running the risk of no longer being able to get to work and the employer was

taking the risk that as a result the work might no longer be suitable as contemplated by statute.

Therefore, the decision of the Commission finding the employee not disqualified from benefits because of leaving work voluntarily without good cause is affirmed. This conclusion is reached only after giving due regard to this and the prior administrative determination by the Commission and the application of § 60.2-618 to an unusually extreme factual situation.