**Barbara AUSTIN, Plaintiff–Appellee,**

v.

**Sandra BERRYMAN; Patrice Johnson; Joseph Hayes; Ralph Cantrell, Defendants–Appellants,**

v.

**NATIONAL EMPLOYMENT LAW PROJECT, INC., Amicus Curiae.**

No. 88–3948.

United States Court of Appeals, Fourth Circuit.

Argued April 11, 1989.

Decided June 28, 1989.

J. Steven Sheppard, III, Asst. Atty. Gen. (Mary Sue Terry, Atty. Gen., on brief), for defendants-appellants.

Hugh F. O'Donnell (Martin D. Webgreit, Client Centered Legal Services of Southwest Virginia, Inc. on brief), for plaintiff-appellee.

(Elizabeth Athos, James Williams on brief), for amicus curiae Nat. Employment Law Project, Inc.

Before ERVIN, Chief Judge, RUSSELL, WIDENER, HALL, PHILLIPS, MURNAGHAN, SPROUSE, CHAPMAN, WILKINSON, and WILKINS, Circuit Judges, sitting *en banc*.[*]

MURNAGHAN, Circuit Judge:

We have before us for *en banc* reconsideration an appeal taken from an action successfully brought by Barbara Austin in the United States District Court for the Western District of Virginia against the Virginia Employment Commission, challenging a denial of unemployment compensation benefits. The facts and procedural history of the action are detailed fully in the previous panel opinion, *Austin v. Berryman*, 862 F.2d 1050 (4th Cir.1988), and the decision of the district court. *Austin v. Berryman*, 670 F.Supp. 672 (W.D. Va. 1987).

In brief, Austin charged, *inter alia*, that the denial of her claim for unemployment benefits, based on a Virginia statute specifically precluding such benefits for any individual who voluntarily quits work to join his or her spouse in a new location, was an unconstitutional infringement upon the incidents of marriage protected by the fourteenth amendment and an unconstitutional burden on her first amendment right to the free exercise of her religion. Her religion happened to command that she follow her spouse wherever he might go and the sincerity of her religious belief was not questioned. The district court found in Austin's favor and awarded injunctive relief and retroactive benefits.

On appeal, Judge Sprouse, writing for a panel majority, found that the denial of benefits did not implicate Austin's fourteenth amendment rights, but that it did unconstitutionally burden Austin's right to the free exercise of her religion. The panel also found, however, that any award of retroactive benefits was barred by the eleventh amendment. One panel member concurred with the panel majority as to the fourteenth and eleventh amendment issues, but dissented as to the existence of a free exercise violation. The panel opinion now, of course, has been vacated by a grant of rehearing *en banc*.

■ After careful consideration of the additional arguments proffered by both sides, the Court, *en banc*, is convinced that the panel majority correctly concluded that denying Austin unemployment benefits did not infringe upon fundamental marital rights protected by the fourteenth amendment. To this extent, we adopt the majority panel opinion. We also find, however, that the denial of benefits did not unconstitutionally burden Austin's first amendment right to the free exercise of her religion.[1] We are persuaded that the views expressed on the first amendment, free exercise of religion claim in the opinion dissenting in part from the panel majority are correct, and we hereby adopt that opinion as that of the *en banc* court. As we find that Austin is not entitled to any relief, we need not address whether the eleventh amendment bars an award of retroactive benefits.

The decisive consideration, as we see it, is that the proximate cause of Austin's unemployment is geographic distance, not her religious beliefs. There is no conflict between the circumstances of work and Austin's religious precepts. Austin's religious beliefs do not "require" her "to refrain from the work in question." *Frazee*

[*] Judge Winter did not participate in *en banc* review.

1. We note that our conclusion in this regard is unaffected by the Supreme Court's most recent entry into the arena, *Frazee v. Illinois Dep't of Employment Security*, — U.S. —, 109 S.Ct. 1514 (1989). In *Frazee*, the Court found a denial of unemployment compensation constituted an unconstitutional burden on the free exercise rights of an individual whose unemployment was occasioned by his refusal to work on his Sabbath. As in the cases cited by the panel majority, Frazee's unemployment was proximately caused by a conflict between a requirement of the employer and a religious belief of the employee. Such a causal connection does not exist here, as explained in the panel dissent.

*v. Illinois Department of Employment Security,* — U.S. —, —, 109 S.Ct. 1514, 1517, 103 L.Ed.2d 914 (1989). Austin is unable to work simply because she is now too far removed from her employer to make it practical. In striking contrast, if one, for genuine religious beliefs, moves to a new residence in order to continue to live with a spouse, and that residence is not geographically so removed as to preclude regular attendance at the worksite, no unemployment, and hence no unemployment benefits, will arise. That amounts to proof that extent of geographical non-propinquity, not religious belief, led to Austin's disqualification for unemployment benefits.

Austin voluntarily decided to quit her job and join her spouse in a new geographic location 150 miles away. Virginia has stated that *every* individual who follows such a course, no matter what the reason, religious or non-religious, is disqualified for unemployment benefits. To craft judicially a statutory exception only for those individuals who profess Austin's religious convictions, particularly in the absence of a direct conflict between a given employment practice and a religious belief, would, in our view, result in a subsidy to members of a particular religious belief, impermissible under the Establishment Clause. *Estate of Thornton v. Caldor,* 472 U.S. 703, 710, 105 S.Ct. 2914, 2918, 86 L.Ed.2d 557 (1985).

Accordingly, the judgment of the district court is

*REVERSED.*

SPROUSE, Circuit Judge, concurring in part and dissenting in part:

I concur in that part of the majority opinion holding that the denial of unemployment benefits to Barbara Austin did not infringe upon fundamental marital rights protected by the fourteenth amendment. I respectfully dissent, however, to that part of the opinion which holds that her first amendment right to the free exercise of religion was not violated.

**1.** Section 60.1–58(a) was repealed and recodified in section 60.2–618(1), effective January 1, 1987.

## I

The facts bear repeating. Austin was employed by McVitty House, Inc., in Salem, Virginia, from May 14, 1984, through June 3, 1985. In the spring of 1985, her husband decided to move approximately 150 miles to Castlewood, Virginia, to care for his eighty-one-year-old mother. She and her husband were longtime members of the Holiness Church, a Christian denomination that required her as part of her religious belief to go with her husband; accordingly, Austin quit her job with McVitty House to accompany him. Unable to find employment in Castlewood, she applied for state unemployment benefits on July 2, 1985. At the time of her benefits application, Virginia Code § 60.1–58(a)[1] provided that an employee was disqualified from receiving unemployment benefits if he or she "left work voluntarily without good cause" and specifically excluded from the definition of "good cause" "the voluntary leaving of work with an employer to accompany or to join his or her spouse in a new locality."[2]

Austin's claim was initially denied by a deputy of the Commission who determined that she had voluntarily left her employment without good cause. On August 22, 1985, at an appeals hearing, Austin testified that her husband had been a member of the Holiness Church since he was an infant and that she joined the church when she married him (eighteen years before she quit her job). She explained the tenets of her faith during the hearing:

[W]e, uh, abide by what the Bible tells us and we live what is wrote in God's Word, His Bible.

. . . .

... [O]ur belief is that we honor our husband. It tells you in the Bible that you honor your husband and his decisions on things. And, uh, [we] feel like that if you go against a decision like this pertaining to his mother, which it says in

**2.** The statute, however, allows benefits to claimants who voluntarily leave employment for other compelling personal reasons.

the Commandments that you honor your father and your mother. And in this case his mother needed him and he felt like that he would be going against what the, that our religion is, that he would be going against God's Word if he did not go and, and take care of his mother when she was in need. And therefore [we] also believe[ ] that you honor your husband's decision and that you go where your husband says go, because [we] feel like that that's breaking up a home ... if you don't.

. . . .

It is been taught to us and in the Bible it, it tells you. It's not that, uh, it's, it's his mother and, and it, and, respect it is my mother too in our belief. It is, um ... She's just like, it would be my own mother in our belief because she's part of our family. It's her, it's his mother, but just like, um, my mother and father, we do and, and honor what they think.... And what they need.

. . . .

... I ... didn't feel like there was any other choice to be made.... [B]ecause of our religion I felt ... it was the right thing to do because his mother needed help and she's part of the family and we abide by our religion that part of the fam[ily].

The appeals examiner nevertheless decided that she was not entitled to unemployment benefits, and she appealed to the Commission itself.

On March 5, 1986, the Commission affirmed the decision of the appeals examiner. It held that Austin's primary reason for quitting her job was a desire to move with her husband to a new locality and that she therefore voluntarily left her employment without good cause. The Commission also rejected Austin's first amendment free exercise claim:

[Austin's] decision to terminate employment was not because of any religious objection to the job held or work requirements expected of her. [She] was, at all times, consistent with her claimed religious belief, able to be employed but for the decision of her husband to relocate.

In this case, [her] decision to quit her employment had nothing to do with any religious objection to the job itself or to a requirement of the employer.

## II

In expressing my disagreement with the majority's conclusion, I emphasize that the sincerity of Austin's religious belief causing her to leave her employment in Salem was not questioned by her employer, the administrative law judge, Virginia on appeal, nor, indeed, by my brethren in the majority. In view of this, we are bound by the Supreme Court's trilogy of decisions in *Hobbie v. Unemployment Appeals Commission of Florida*, 480 U.S. 136, 107 S.Ct. 1046, 94 L.Ed.2d 190 (1987), *Thomas v. Review Board of Indiana Employment Security Division*, 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981), and *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), to hold that her first amendment right to free exercise of her religion was violated by the state's denial of unemployment benefits to her.

The majority purports to find constitutionally meaningful distinctions between the facts involved in the *Sherbert* line of cases and the circumstances resulting in Austin's disqualification. The factual underpinnings of each of the four unemployment benefits claims are, of course, different. The salient factor that binds them to the application of the free exercise clause first amendment principle, however, is the same: Austin and the claimants in *Sherbert*, *Thomas*, and *Hobbie* were all unemployed because of their actions that were religiously mandated and constitutionally protected from inappropriate government pressure. Faced with a conflict between continued employment and violation of their religion, they followed religious principles.

My brethren in the majority protest that, nevertheless, Austin's employer was not responsible for her plight. Neither, however, were the employers in *Sherbert*, *Thomas*, and *Hobbie*. In each case, the employer would have welcomed the employees' return and erected no obstacles

whatever, provided the claimants altered their religiously-motivated choices. The employers in each case, however, predictably insisted on a fundamental employer prerogative—that employees perform specified work at specified times and places. In any event, a focus on employer responsibility is misguided. The first amendment, as applied to the states through the fourteenth amendment, requires that a state's action penalizing an employee for exercising religious beliefs be subjected to strict scrutiny even if his religiously-motivated choice runs afoul of an employer's otherwise legitimate demands. The majority fails to recognize the direction of this first amendment command. It is directed at government, not at employers. The question dealt with by the Supreme Court in the *Sherbert* trilogy and which this court ought to address in this case is whether the state's action burdens the claimant's free exercise right and, if so, whether the burden is justified by a compelling state interest. *See Hobbie*, 480 U.S. at 141, 107 S.Ct. at 1051.

Another underlying theme of the majority position mirrors that expressed by the Virginia Employment Commission, *viz.*, that Austin's unemployment was caused not by her religious belief which required her to move the 150–mile distance from her former employment but by the geographic distance itself. Austin's decision to remove herself geographically from Salem was, of course, the immediate and physical reason for her unavailability for work at the Salem plant, just as the immediate and physical reason for Sherbert and Hobbie's unavailability for the required full week's work was that they would not work on Saturday. Similarly, Thomas was not available because he would not help build military tanks.

In my view, the majority confuses cause and effect. The central question relates to the ultimate, not the immediate cause of unemployment. Religiously motivated action can always be subdivided finely enough so that the very last elementary act is purely secular. The decisive question is whether that unemployment was ultimately caused by a sincerely-held religious belief

that forced an employee to choose between religious principles and economic advantage. Virginia allows employees who voluntarily quit employment to qualify for benefits by showing that their quitting was caused by exceptional circumstances. It specifically excepts from this favorable treatment employees who quit work to follow their spouses when the latter relocate. Without more, I would agree that the Virginia General Assembly acted constitutionally. However, as the Supreme Court said in *Sherbert:*

> [T]he consequences of such a disqualification to religious principles and practices may be only an indirect result of welfare legislation within the State's general competence to enact.... [T]his is only the beginning, not the end, of our inquiry.

374 U.S. at 403–04, 83 S.Ct. at 1793–94. The Court made clear in *Thomas* that

> Where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists. While the compulsion may be indirect, the infringement upon free exercise is nonetheless substantial.

450 U.S. at 717–18, 101 S.Ct. at 1431–32. In the circumstances of this case, the administration of the spousal exception encroached on the exercise by Mrs. Austin of her religious beliefs, and the state's action denying her unemployment benefits conflicted with the free exercise clause of the first amendment.

Finally, the majority opinion's summary conclusion that the establishment clause precludes the granting of employment benefits to a claimant such as Austin was rejected in *Hobbie*, 480 U.S. at 144–45 & n. 11, 107 S.Ct. at 1051 & n. 11. *Estate of Thornton v. Caldor, Inc.*, 472 U.S. 703, 105 S.Ct. 2914, 86 L.Ed.2d 557 (1985), cited by the majority, *supra*, p. 788, was explicitly distinguished in *Hobbie* as concerning an absolute preference given by the state to

Sabbath observance without allowing consideration of countervailing circumstances. In *Hobbie,* as in this case, awarding of "benefits to religious observers does not single out a particular class of such persons for favorable treatment and thereby have the effect of implicitly endorsing a particular religious belief." 480 U.S. at 145 n. 11, 107 S.Ct. at 1051 n. 11. Rather, it is a neutral accommodation of Austin's religious belief that is necessary so as not to burden her exercise of her first amendment right.

I am authorized to say that Circuit Judges ERVIN, PHILLIPS, and WILKINSON join in this opinion.