**Barbara AUSTIN, Plaintiff,**

v.

**Sandra BERRYMAN, et al., Defendants.**

**No. 86–0147–A.**

United States District Court, W.D. Virginia, Abingdon Division.

July 31, 1991.

---

Hugh F. O'Donnell, Client Centered Legal Services, Castlewood, Va., for plaintiff.

Susan T. Ferguson, Asst. Atty. Gen., Richmond, Va., for defendants.

## MEMORANDUM OPINION

WILSON, District Judge.

An individual otherwise eligible to receive employment compensation in Virginia is disqualified by Va.Code Ann. § 60.2–618 (Repl.Vol.1987) if he or she voluntarily resigns "to accompany or to join his or her spouse in a new locality." [1]  Plaintiff, Barbara Austin ("Austin"), brings this action pursuant to 42 U.S.C. § 1983 for declaratory, injunctive, and other relief against various officials of the Virginia Employment Commission maintaining that the disqualifying provision is a gender-based classification in violation of the fourteenth amendment to the United States Constitution. That challenge is before the court following *en banc* reversal by the court of appeals of a declaratory judgment entered by the Honorable Glen M. Williams declaring the statute unconstitutional on first amendment and other grounds.  Having granted complete relief, Judge Williams found it unnecessary to decide the question of whether the statute is a gender-based classification in violation of the equal protection clause.  That equal protection issue is now before the court.[2]  Finding the statute to withstand equal protection scrutiny, Austin's challenge is rejected.[3]

In 1979, the statute now codified as Va. Code Ann. § 60.2–618 was amended by the Virginia General Assembly to include the challenged provision.  As originally introduced by Senator William E. Fears in January 1979, Senate Bill 553 would have disqualified only a person leaving *public employment* to follow his or her spouse to a new job location.  However, both federal and state funds are utilized in the unemployment compensation system, and the payment of federal funds is conditioned on state law, including certain provisions, 42 U.S.C. § 502, and satisfying certain requirements, 26 U.S.C. § 3304.  In an effort to determine whether the proposed amendment would meet those requirements, if enacted, on January 19, 1979, John W. Rusher, Associate Commissioner of Unemployment Insurance for the Virginia Employment Commission, submitted Senate Bill 553 to the Associate Regional Administrator for Unemployment Insurance of the United States Department of Labor, T. Edward Burns.  Burns responded on January 23, 1979:

> [W]hile we do not recommend passage of any legislation which would automatically deny benefits to an individual who leaves work to accompany a spouse to a new location, such a provision would not conflict with Federal law requirements. However, the amendment contained in S.B. 553 is restricted to individuals in public employment and would therefore appear to contravene the provisions 3304(a)(6)(A) FUTA which requires equal treatment of individuals covered under Section 3309(a)(1).

To cure the problem noted by Burns, the bill was amended by broadening the disqualifying provision so that anyone leaving work, whether the work was public or private, to follow his or her spouse to a new locality would be ineligible for unemployment benefits, and the amended bill was enacted on March 31, 1979.

---

1. Va.Code Ann. § 60.2–618 recodifies Va.Code Ann. § 60.1–58.

2. Although not raised by the parties, the mandate from the court of appeals reverses. That mandate does not preclude this court from addressing the previously unaddressed equal protection question. *See Heinicke Instruments Co. v. Republic Corp.,* 543 F.2d 700, 702 (9th Cir. 1976).

3. Additional facts and procedural history may be found in the district court opinion and the panel and *en banc* decisions of the court of appeals. *Austin v. Berryman,* 670 F.Supp. 672 (W.D.Va.1987), *aff'd in part, rev'd in part, and remanded,* 862 F.2d 1050 (4th Cir.1988), *rev'd,* 878 F.2d 786 (4th Cir.1989) (*en banc*).

In June of 1985, Austin quit her job in Salem, Virginia, to follow her husband to Castlewood, Virginia. She applied for, but was denied, unemployment compensation based upon Va.Code Ann. § 60.2–618, because she had voluntarily left work to follow her husband to a new locality. Following a hearing, an appeals examiner determined that Austin was not entitled to benefits, and on March 5, 1986, the Commission affirmed the decision of the appeals examiner. This suit was commenced in June of 1986 alleging first amendment and other claims. Those claims were rejected by the court of appeals *en banc* and are no longer in issue. The only claim currently in issue is the claim that Va.Code Ann. § 60.2–618 violates the equal protection clause because of its impact on women and because of the legislature's discriminatory intent.[4]

Austin maintains that Senator Fears, a senator in the Tidewater area, an area heavily populated by military personnel, introduced Senate Bill 553 in response to pressure from constituents who were financially impacted by the unemployment compensation system, because they employed the spouses of military personnel who are routinely transferred. Austin then offers her explanation of the financially motivated political pressures that led to the introduction of Senate Bill 553:

> In its original form, the bill proposed by Senator Fears did not propose a general disqualification for all persons who left employment to join or accompany their spouse in a new locality. Rather, his original proposal was limited to persons who left public employment.

> To understand why some public employers would be especially interested in spousal leaving provisions, one must understand a basic distinction which exists

in the Virginia unemployment compensation law.

Most private sector employers are required to pay taxes on a regular basis to the Unemployment Compensation Trust Fund. The amount of taxes will depend on the employer's experience rating. As a general rule, an increase in the benefits paid out and charged to the employer's individual account will cause an increase in the tax rate.

Under the statutory predecessor to Va. Code § 60.2–528, benefits paid to persons who left work to stay with a spouse were treated the same as benefits currently paid to persons who leave work to take a better job. Although benefits were paid, they were not charged to the account of the individual employer.

Public employers are not automatically required to pay taxes under Virginia law. Under Va.Code § 60.2–507 and its statutory predecessors, they have been given the right to choose. They can either pay taxes as other employers do or they can participate in the unemployment compensation program on a re-imbursable basis. If they elect the latter course, they must repay the Fund an amount "equivalent to the full amount of regular and extended benefits paid." *See* Va.Code § 60.2–507.

Because of the repayment requirement, public employers of military spouses who participated on a reimbursable basis would therefore have had a direct financial interest in preventing payment of benefits.

Memorandum in Support of Plaintiff's Motion for Summary Judgment at 18. In light of the economic justification for and the history of Senate Bill 553, and in light of the fact that most military spouses are female, it follows, according to Austin, that

---

**4.** The court has broadly construed Austin's complaint to allege purposeful gender-based discrimination. Austin's "fourth claim for relief" contains the pertinent allegations:

31. On information and belief, the vast majority of claimants affected by the statutory provision at issue in this case are women.
32. On information and belief at the time the statute at issue here was enacted officials of the Virginia Employment Commission knew or had reason to know that the statute would

have a disparate impact on female wage earners.
33. Notwithstanding awareness of the discriminatory impact on women, officials of the VEC lobbied for its enactment.
34. Because of the discriminatory intent involved in the enactment of the statute and its disproportionate impact on women, Plaintiff's rights to equal protection of the law have been violated by the statute.

the Virginia General Assembly is chargeable with invidious, gender-based discrimination.

## I.

Because "[t]he calculus of effects, the manner in which a particular law reverberates in society, is a legislative and not a judicial responsibility," and because Austin's own arguments demonstrate that Va. Code Ann. § 60.2–618, which is neutral on its face, had a legitimate, non-discriminatory purpose, Austin's equal protection challenge fails.[5] As the United States Supreme Court has made clear, "purposeful discrimination is 'the condition that offends the constitution.'" *Personnel Adm'r v. Feeney*, 442 U.S. 256, 274, 99 S.Ct. 2282, 2293, 60 L.Ed.2d 870 (1979); *see Frock v. United States R.R. Retirement Bd.*, 685 F.2d 1041 (7th Cir.1982), *cert. denied*, 459 U.S. 1201, 103 S.Ct. 1185, 75 L.Ed.2d 432 (1983); *Givens v. United States R.R. Retirement Bd.*, 720 F.2d 196 (D.C.Cir.1983), *cert. denied*, 469 U.S. 870, 105 S.Ct. 219, 83 L.Ed.2d 149 (1984); *Steiger v. United States R.R. Retirement Bd.*, 761 F.2d 1428 (9th Cir.1985). *Personnel Administrator of Massachusetts v. Feeney* is instructive.

*Feeney* presented an equal protection challenge by a non-veteran female to the Massachusetts Veteran's Preference Law, which required that all veterans applying for civil service be considered for appointments before all qualifying non-veterans. At the time it was challenged by Feeney, the statute benefited "an overwhelmingly male class." *Feeney*, 442 U.S. at 269, 99 S.Ct. at 2291. In sustaining the statute's validity, the court noted that although the court's recent cases had recognized that the disparate impact of a neutral law on an historically disadvantaged class may indicate that "an unconstitutional purpose may still be at work," those recent cases "signaled no departure from the settled rule that the Fourteenth Amendment guaran-

tees equal laws, not equal results." *Id.* at 273, 99 S.Ct. at 2293. The court then articulated the following test:

When a statute gender-neutral on its face is challenged on the ground that its effects upon women are disproportionably adverse, a two fold inquiry is thus appropriate. The first question is whether the statutory classification is indeed neutral in the sense that it is not gender based. If the classification itself, covert or overt, is not based upon gender, the second question is whether the adverse effect reflects invidious gender-based discrimination. In this second inquiry, impact provides an "important starting point," but purposeful discrimination is "the condition that offends the Constitution."

*Id.* at 274, 99 S.Ct. at 2293 (citations omitted). According to the court, to establish a "discriminatory purpose," more is required than "volition" or "awareness of consequences." The decision-maker must have "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id.* at 279, 99 S.Ct. at 2296. Because Feeney failed to demonstrate that the law reflected "a purpose to discriminate on the basis of sex," her claim was rejected. *Id.* at 281, 99 S.Ct. at 2297. For the same reason, Austin's claim must be rejected.

Although legislation neutral on its face may, in fact, be a purposeful device to discriminate when either race or gender-based discrimination is claimed, intent nevertheless must be determined. "Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 266, 97 S.Ct. 555, 564, 50 L.Ed.2d 450 (1977). But it should be kept in mind that

---

5. Similar provisions in other states have survived equal protection scrutiny. *See, e.g., Warren v. Board of Review*, 463 So.2d 1076 (Miss., 1985); *Chandler v. Dep't of Employment Sec.*, 678 P.2d 315 (Utah, 1984); *Pyeatt v. Idaho State Univ.*, 98 Idaho 424, 565 P.2d 1381 (1977); *Gil-*

*man v. Unemployment Compensation Bd. of Review*, 28 Pa.Commw. 630, 369 A.2d 895 (1977); *Kantor v. Honeywell, Inc.*, 286 Minn. 29, 175 N.W.2d 188 (1970); *Illinois Bell Tel. Co. v. Board of Review*, 413 Ill. 37, 107 N.E.2d 832 (1952).

the process of divining legislative intent in an effort to determine whether legislation, neutral on its face, constitutes purposeful discrimination, with the give and take characteristic of the legislative process, often places the judiciary in a position precariously close to interference in that process. *See generally South Carolina Educ. Ass'n v. Campbell*, 883 F.2d 1251 (4th Cir. 1989), *cert. denied,* — U.S. —, 110 S.Ct. 1129, 107 L.Ed.2d 1035 (1990).[6] Legislation results from complex and frequently conflicting motivations and intentions. To assume that the judiciary is capable of divining a monolithic intent from such complexity in more than a handful of cases is nothing less than legal fiction. Although we must endeavor to expose purposeful legislative discrimination, whether clear or subtle, we must guard against legal fictions guiding constitutional inquiry when the motivations of a state legislature or Congress are in question. We must not intrude upon legislative decision-making through the use of a legal fiction, which in reality masks our own personal preferences. Fortunately, in this case, it is unnecessary for the court to declare a fictional legislative "will" or motive. The purpose of Senate Bill 553 has been explained by Austin. Rather than demonstrating a purpose to discriminate, Austin's own explanation underscores that taxes and other financial concerns—not gender—generated the political pressures leading to the introduction of Senate Bill 553. Thus, like Feeney, Austin has simply failed to demonstrate that the provision she challenges reflects a purpose to discriminate on the basis of sex.

### II.

For the reasons stated above, the challenged provision of Va.Code Ann. § 60.2–618, which disqualifies an individual otherwise eligible to receive unemployment compensation if he or she voluntarily resigns "to accompany or to join his or her spouse in a new locality," is found not to be a gender-based classification in violation of the equal protection clause of the four-

teenth amendment. Austin's request for declaratory, injunctive, and other relief, accordingly, will be denied.

An appropriate order will issue.

### FINAL ORDER

In accordance with the court's memorandum opinion entered on this date it is ORDERED and ADJUDGED that judgment be entered for defendants, Sandra Berryman, in her official capacity as Acting Chief Appeals Examiner of the Virginia Employment Commission, Patrice Johnson, in her official capacity as Special Examiner of the Virginia Employment Commission, Joseph Hayes, in his official capacity as Special Examiner for Commission Appeals of the Virginia Employment Commission, and Ralph Cantrell, in his official capacity as Commissioner of the Virginia Employment Commission, and against plaintiff, Barbara Austin, and this case is ORDERED stricken from the docket of the court.

---

**6.** As pointed out by the court of appeals, however, two of the "limited exceptions to the principle that judicial inquiry into legislative motive is to be avoided ... include race and sex discrimination cases...." *Campbell,* 883 F.2d at 1259.